```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
```

KEVIN CRENSHAW,

                  *Plaintiff*,           **REPORT AND RECOMMENDATION**

                                                  24 CV-00305 (GRB) (JMW)

        -against-

ERROL TOULON, JEN the Head of B Crew Staff,

                  *Defendants*.

```
-------------------------------------------------------------------X
```

**A P P E A R A N C E S:**

    **Kevin Crenshaw**
    24-B-0712
    MARCY CORRECTIONAL FACILITY
    P.O. Box 3600
    Marcy, NY 13403
    *Pro Se Plaintiff*

    Anne C. Leahey
    Stephen E Carlin
    **Suffolk County Department of Law**
    100 Veterans Memorial Highway
    PO Box 6100
    Hauppauge, NY 11787
    *Attorneys for Defendant Errol Toulon*

**WICKS,** Magistrate Judge:

        Plaintiff Kevin Crenshaw ("Plaintiff" or "Mr. Crenshaw") commenced this action against Defendants Errol Toulon ("Toulon"), and Jen, The Head of B Crew Staff ("Jen" and collectively, the "Defendants") seeking damages pursuant to 42 U.S.C. § 1983, for allegedly contracting Hepatitis A while working at Defendants' facility due to, *inter alia*, negligent training. (*See*

1

generally ECF Nos. 1, 10, 22-4, and 22-5.) Before the Court now on referral from the Hon. Gary R. Brown, U.S.D.J. is Defendant Toulon's Motion for Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 22.) For the reasons set forth below, the undersigned respectfully recommends that Defendant's Motion to Dismiss be **GRANTED.**

## BACKGROUND

Mr. Crenshaw, a *pro se* litigant is currently incarcerated at the Marcy Correctional Facility. On January 8, 2024, Plaintiff filed its Original Complaint, alleging claims of negligence and deliberate indifference pursuant to 42 U.S.C. § 1983 for causing Plaintiff to contract a disease, namely, Hepatitis A, and sought one (1) million dollars in damages. (ECF No. 1.) At that time, Plaintiff named Toulon, Jane Doe and Jon Doe as Defendants. (*Id.*) Plaintiff then filed a Motion for Leave to Proceed in Forma Pauperis. (ECF No. 5.) The Hon. Judge Gary R. Brown granted this application, and at the same time dismissed the Complaint under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) with leave to file an amended complaint. (ECF No. 6.) The reasons for dismissal were: (i) Plaintiff's failure to include any allegations of conduct or omissions by any defendant for his § 1983 claims, (ii) lack of factual allegations as to the state of mind of Toulon in connection with the deliberate indifference claim, (iii) in the event that a deliberate indifference claim was adequately pled, "Plaintiff [did] not allege whether he was a pre-trial detainee or a convicted inmate at the time of the challenged conduct[,]" which would alter the analysis to viewed either under the Due Process Clause of the Fourteenth Amendment or the Eighth Amendment, (iv) under either Amendment, the claim still fails, (v) the complaint did not comport with Fed R. Civ. P. 8, and (vi) absent any plausible federal claims, the Court would not exercise supplemental jurisdiction on what appeared to be state claims. (*Id.* at 5-9.)

On April 4, 2024, Plaintiff filed his First Amended Complaint ("FAC") against Toulon, removed Jane Doe and Jon Doe as parties, and added a new defendant, Jen the head of B Crew Staff.[1] (ECF No. 10.) The FAC also included allegations that Plaintiff worked in the kitchen at the Yaphank Correctional Facility ("Yaphank Facility"), was later moved to the kitchen dorm, where he was not trained properly, worked with no gloves, cut himself on a "sharp medal cook pan", and developed Hepatitis A due to the facility's conditions. (*Id.* at 1-2.) On June 17, 2024, Defendant requested a pre-motion conference on their anticipated motion to dismiss before Judge Brown. (ECF No. 13.) On June 20, 2024, all pretrial proceedings including the pre-motion conference, and any future dispositive pretrial motions were referred to the undersigned for a Report and Recommendation. (Electronic Order dated 06/20/2024.) A Pre-Motion Conference was scheduled for August 2, 2024, before the undersigned and Plaintiff was directed to respond to Defendant's pre-motion letter on or before July 19, 2024. (Electronic Order dated 06/26/2024.) The Conference was rescheduled to August 6, 2024, due to the facility's inability to accommodate the call. (ECF No. 16; Electronic Order dated 07/12/2024.) During the Conference, Defendant was granted leave to file the Motion to Dismiss and the following briefing schedule was set:

> Defendant's Motion shall be served upon *pro se* Plaintiff on or before: August 30, 2024. Plaintiff's Opposition shall be served upon Defendant on or before: September 30, 2024. Defendant's Reply shall be served upon Plaintiff on or before: October 18, 2024. Counsel for Defendant is directed to bundle file the Motion to Dismiss on ECF on or before October 18, 2024. On or before August 12, 2024, counsel for Defendant is to serve a copy of this Order upon Plaintiff and file proof of service on ECF.

(ECF No. 18.) Defendant filed proof of service on August 6, 2024. (ECF No. 19.) Defendant also served Plaintiff with copies of its Motion to Dismiss accompanied with a full text of Fed. R. Civ.

---

[1] Defendant Jen's full name has not yet been identified nor has Jen been served with a summons and complaint at any point throughout this action. Thus, the only properly served party here is Toulon.

3

P. 12, cases and other authority used in Defendant's Motion. (ECF No. 20.) On October 18, 2024, Defendant filed the fully submitted Motion to Dismiss, inclusive of what appears to be further amendments of Plaintiff rather than oppositions.[2] (ECF No. 22.)

## THE LEGAL FRAMEWORK

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also CompassCare v. Hochul*, 125 F.4th 49, 56-57 (2d Cir. 2025) (quoting *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) ("a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.")).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Annabi v. New York Univ.*, No. 24-CV-2601, 2025 WL 1066083, at *1 (2d Cir. Apr. 9, 2025) (quoting *Iqbal*, 556 U.S. at 687). To that end, complaints are properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When considering a motion to dismiss under 12(b)(6), the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements

---

[2] The bundled motion submitted includes a Second Amended Complaint ("SAC") and a Third Amended Complaint ("TAC") as opposed to a formal motion in opposition.

4

of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required. Put differently, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions. … Factual allegations must be enough to raise a right to relief above the speculative level. To survive dismissal, a complaint must provide enough facts to state a claim to relief that is plausible on its face." *Go New York Tours Inc. v. Gray Line New York Tours, Inc.*, No. 24-CV-2392, 2025 WL 947083, at *2 (2d Cir. Mar. 27, 2025) (quoting *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013)).

    The above standards apply to *pro se* complaints as well, but in a far less rigid manner. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotes and citations omitted). When cases involve a *pro se* complaint like here, the Court must interpret the pleading to raise the strongest claim suggested by the allegations. *Rosen v. N. Shore Towers Apartments, Inc.*, No. 11-CV-00752 (RRM) (LB), 2011 WL 2550733, at *3 (E.D.N.Y. June 27, 2011); *Zapotocky*, 587 B.R. at 592–93 (collecting cases) ("The pleadings and allegations of a *pro se* plaintiff must be construed liberally for the purposes of deciding motions pursuant to Rules 12(b)(1) and 12(b)(6)."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citations omitted) ("The submissions of a *pro se* litigant should be interpreted to raise the strongest arguments that they suggest.")

    "However, mere conclusions of law or unwarranted deductions need not be accepted." *Id.* (internal quotation marks omitted.) Notably, "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,' and district courts 'cannot

5

invent factual allegations' that the plaintiff has not pleaded." *Vidurek v. Pollen*, No. 20-CV-6714 (CS), 2021 WL 4066503, at *7 (S.D.N.Y. Sept. 7, 2021) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

It is against this backdrop that the Court considers the motion.

## **DISCUSSION**

Given Plaintiff's *pro se* status, the undersigned viewed all material in a light most favorable to Plaintiff, and construes the complaint to assert claims under 42 U.S.C. § 1983 for deliberate indifference due to the unsanitary conditions at the Yaphank Facility as well as a state law claim of negligent hiring, training or supervision. The undersigned analyzes each separately to determine whether they may survive this motion to dismiss under 12(b)(6).

### I.     **Plaintiffs' Federal Claims**

Plaintiff alleges that he experienced unhygienic conditions and inadequate medical care while in custody at the Yaphank Facility from August 29, 2023, through October 5, 2023, which led to Plaintiff contracting Hepatitis A. (ECF No. 10 at 1-2.) The procedural vehicle that Plaintiff uses to bring this action is § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. "[S]ection 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Schuloff v. Queens Coll. Found., Inc.*, 165 F.3d 183, 184 (2d Cir. 1999) (internal quotation marks omitted). A plaintiff asserting a § 1983 claim must establish that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the

6

plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

Seemingly here, even after liberally construing Plaintiff's allegations, such 1983 claims fail for two reasons. *First*, the Amended Complaint is devoid of any personal involvement by Toulon to deprive Plaintiff of his constitutional rights. To state a claim against an individual defendant in a § 1983 action, a plaintiff must demonstrate personal involvement, specifically "direct participation or failure to remedy the wrong after learning of it or creation of a policy or custom under which unconstitutional practices occurred." *Howe v. Town of Hempstead,* No. 04-CV-0656 (DRH) (ETB), 2006 WL 3095819, at *11 (E.D.N.Y. Oct. 30, 2006). "Merely holding a position of responsibility is insufficient to impose liability under § 1983. *Id.* (citing *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996); *see also Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (listing factors to establish personal involvement); *Keles v. Davalos*, 642 F. Supp. 3d 339, 361 (E.D.N.Y. 2022) (same). *Second*, aside of this case caption, Toulon is not mentioned at all within the amendments. In the event that Judge Brown disagrees with this finding that no direct participation has been alleged, the undersigned analyzes if deliberate indifference has been adequately pled.

Absent from Plaintiff's FAC was any indication or words of deliberate indifference. However, Plaintiff's proposed SAC does. (ECF No. 22-4 at 5.) Nonetheless, in all the different renditions, a common theme of failing to address Plaintiff's concerns at the Yaphank Facility continues. (*See* ECF Nos. 1, 10, 22-4, and 22-5.) Important here is Judge Brown's directive to Plaintiff to establish his status at the time of the alleged violations. (ECF No. 6 at 6.) Specifically, whether Plaintiff was a "pre-trial detainee or a convicted inmate" to determine whether the violation was an Eighth or Fourteenth Amendment violation. (*Id.*) To date, Plaintiff has failed to

7

do so. This is because as Judge Brown illustrated, the Eighth Amendment applies to prisoners while the Due Process Clause of the Fourteenth Amendment applies to a pre-trial detainee. *(Id.)*

> A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment. … A pretrial detainee's claims are evaluated under the Due Process Clause because, [p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise. … A detainee's rights are at least as great as the Eighth Amendment protections available to a convicted prisoner.

*Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citing cases).

Alleged violations of both Amendments require a plaintiff to meet a two-prong test: (i) "the alleged deprivation must be, in objective terms, sufficiently serious; and [(ii)] the charged official conduct must act with a sufficiently culpable state of mind." *Richards v. Nassau Cnty.*, No. 24-CV 7957(GRB) (ARL), 2025 WL 51335, at *3 (E.D.N.Y. Jan. 8, 2025) (citing *Espinosa v. Nassau Cnty. Corr. Ctr.*, No. 20-CV-0223 (GRB), 2020 WL 4614311, at *3 (E.D.N.Y. July 22, 2020)).

Plaintiff fails to allege deliberate indifference under both the Eight and Fourteenth Amendments. As to the first prong, while there is no set definition, lack of basic human needs such as medical care may be deemed sufficiently serious. *Darnell*, 849 F.3d at 30 (*Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)); *see also id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'"))). Here, Plaintiff alleges in the FAC, that the lack of proper gear including gloves to wash pots resulted in his diagnosis. (ECF No. 10.) In the SAC, Plaintiff further alleges the lack of proper

8

gear when washing dishes, resulted in his skin peeling and having to serve food without adequate serving utensils. (ECF No. 22-4 at 1-3.) While at this location, Plaintiff's symptoms worsened even after receiving medication because of the "filthy" conditions including "mice droppings" in the kitchen area. (*Id.* at 4.) The TAC includes substantially similar allegations. (ECF No. 22-5.) These circumstances objectively meet the first prong. As to prong two, all the Complaints fail to set forth the state of mind of Toulon. The absence of any factual allegations to determine Toulon's or any other individual's subjective intentions, leads to Plaintiff's downfall. *See Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[A] plaintiff must show that the defendant acted with 'deliberate indifference to serious medical needs.'")).

Indeed, this District and in particular, Judge Brown has afforded *pro se* litigants, including Plaintiff, with ample opportunities to cure pleading deficiencies. *See Scelza v. Dep't of Suffolk Cnty. Corr.*, No. 24-CV-00492(GRB) (JMW), 2024 WL 1934220, at *2 (E.D.N.Y. May 2, 2024), *appeal dismissed* (Sept. 25, 2024). In *Scelza*, much like here, no allegations were present that identified "conduct or inaction attributable to any of the Defendants." *Id.* at *4. That is because "[s]imply naming the individuals against whom relief is sought is insufficient." *Id.* Judge Brown dismissed Scelza's § 1983 claims upon finding that plaintiff's amendment continued to include bald assertions and exclude factual allegations of individual involvement. *Id.* at *4-5. Similar to *Scelza*, Mr. Crenshaw alleges he suffered injuries due to the conditions of the Yaphank Facility, namely that he contracted Hepatitis A and received inadequate medical care. (ECF No. 10.) Yet, Mr. Crenshaw neglects to provide the Court with any support, to either find or infer personal involvement by any named defendant. Given the related circumstances in both cases, the undersigned finds no reason that dismissal is not warranted.

9

Moreover, both the Second Circuit and this District have dismissed claims with similar circumstances, where no personal involvement has been demonstrated in the pleadings. *See e.g., Hankerson v. S. Hosp. Brooklyn, New York*, No. 24-CV-3472 (LDH) (LB), 2025 WL 1126476, at *2 (E.D.N.Y. Apr. 15, 2025) (dismissing *pro se* plaintiff's 1983 claims for failure to allege personal involvement by any defendant); *Townsend v. New York*, No. 14-CV-6079 (CBA) (LB), 2015 WL 4692604, at *5 (E.D.N.Y. Aug. 6, 2015) (dismissing the *pro se* litigant's claims against defendants as no personal involvement was alleged and plaintiff "merely [listed] them as defendants"); *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (affirming the district court's decision to dismiss because plaintiff failed to demonstrate deliberate indifference); *Bangs v. Warden of Suffolk Cnty. Jail*, No. 23-CV-2619 (JMA) (JMW), 2023 WL 3931697, at *3 (E.D.N.Y. June 9, 2023) (citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)) (finding that there are no plausible claims and noting an "individual cannot be held liable for damages under Section 1983 'merely because he held a high position of authority.'").

Therefore, Plaintiff has failed to state a claim under either the Eighth or Fourteenth Amendment.

## II.    Plaintiffs' State Claims under Supplemental Jurisdiction

Given that the undersigned has found Plaintiff cannot survive dismissal on his federal claims, and that the remaining claims are based on supplemental jurisdiction, there must be an independent ground for this Court to hear these claims.

The original subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. "Under these statutes, a federal district court has original subject matter jurisdiction only when a 'federal question' is presented or, if the plaintiff

10

is asserting claims under state law under the court's diversity jurisdiction, when the plaintiff and the defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000." *Juravel v. Sigal*, No. 1:23-CV-10550, 2024 WL 218381, at *2 (S.D.N.Y. Jan. 19, 2024).

Further, § 1367(a) confers on the Court "supplemental jurisdiction over all [ ] claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "For purposes of section 1367(a), claims 'form part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)). The "trial court must consider whether any of the four grounds set out in subsection 1367(c) are present to an extent that would warrant the exercise of discretion to decline assertion of supplemental jurisdiction." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004). Under subsection 1367(c), a court may decline to exercise supplemental jurisdiction over a permissive counterclaim if: "(1) the claim raises novel issues or complex issues of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Here, subsection (3) is directly on point. Since the undersigned recommends dismissal of all of Plaintiff's federal claims, which was the only basis that this Court had original jurisdiction, this Court can decline to exercise supplemental jurisdiction. "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be

11

disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 293 (E.D.N.Y. 2014) (citing *Birch v. Pioneer Credit Recovery, Inc.*, No. 06–CV–6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir.1986)). "The decision to exercise supplemental jurisdiction over state law claims once the claims over which the district court had original jurisdiction have been dismissed 'is within the sound discretion of the district court.'" *Silverman v. Miranda*, 116 F. Supp. 3d 289, 300 (S.D.N.Y. 2015), *aff'd sub nom. Silverman v. Teamster Loc. 210 Affiliated Health & Ins. Fund*, 725 F. App'x 79 (2d Cir. 2018), *as amended* (June 7, 2018) (quoting *Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106, 117 (2d Cir. 2013)).

      The remaining claim arises from Defendant's alleged negligent training, which does not share the same common nucleus as the federal claims. Since it is within the sound discretion of the Court to exercise supplemental jurisdiction, and Plaintiff's numerous Complaints do not meet the pleading standards, even for *pro se* litigants, the undersigned does not find that exercising jurisdiction here would be fruitful. However, if Judge Brown disagrees, this claim would require its own basis for jurisdiction and as such, diversity must exist. Here, Plaintiff seeks a million dollars in damages, and thus, the amount of controversy here is met. However, the pleadings demonstrate both parties are domiciliaries of New York, and no diversity of citizenship is present. (ECF No. 1.)

      Moreover, as Toulon point out, Plaintiff has a procedural deficiency. A notice of claim was not filed within ninety (90) days of the alleged conduct. It is well established that, "New York state courts strictly construe Notice of Claim requirements, which federal courts must apply in exercising supplemental jurisdiction over state law claims." *Anderson v. City of Mount Vernon*,

12

No. 23-CV-3963 (NSR), 2024 WL 2158390, at *11 (S.D.N.Y. May 13, 2024) (quoting *Matthews v. City of New York*, 889 F. Supp. 2d 418, 448 (E.D.N.Y. 2012)).

Pursuant to New York General Municipal Law ("NYGML") §§ 50-e, 50-i, "a plaintiff pursuing litigation against a state county [or its employees] must (1) file a notice of intent to file a claim with the respective county and (2) commence the action within the statute of limitations of 'one year and ninety days after the happening of the event upon which the claim is based.'" *McKoy v. Tay*, No. 14-CV-00249 (JMW), 2024 WL 2158029, at *4 (E.D.N.Y. May 14, 2024) (quoting *Horton v. Schenectady Cnty.*, No. 8:21-CV-983 (LEK) (CFH), 2024 WL 1655385, at *2 (N.D.N.Y. Apr. 17, 2024)); *see also Matthews*, 889 F. Supp. 2d at 447 (same). Plaintiff has failed to do so.

Given that Toulon is the Suffolk County Sherriff, meaning an employee of the County, Plaintiff has failed to file a Notice of Claim as required. This procedural requirement is applied equally and with full force to *pro se* plaintiffs. *See e.g.*, *Troy-McKoy v. City of New York Parks & Recreation Dep't*, 94 N.Y.S.3d 440, 440 (N.Y. App. Div. 1st Dep't 2019) (holding *pro se* plaintiff's claims are barred for failure to file timely notice of claim when he sought leave to file a late notice after statute of limitations expired); *Garcia v. Westchester Cnty.*, No. 19-CV-2167 (CS), 2021 WL 706413, at *5 (S.D.N.Y. Feb. 22, 2021) (dismissing *pro se* plaintiff's state law tort claims under NYGML § 50-i, where defendant represented that *pro se* Plaintiff had not filed a Notice of Claim, and *pro se* plaintiff presented no evidence to the contrary); *Prince v. Suffolk Cnty. Dep't of Health Servs.*, No. 89 CIV. 7243 (LAP), 1996 WL 393528, at *4 (S.D.N.Y. July 12, 1996) (dismissing former *pro se* plaintiff's SAC where the amended complaint failed to include any allegation about a notice of claim); *Tanzi v. Town of Marlborough*, No. 1:13-CV-1113 GTS/RFT, 2014 WL 2815777, at *10 (N.D.N.Y. June 23, 2014) ("[U]nder New York

13

General Municipal Law § 50–i, a plaintiff may assert negligence and malfeasance claims against public officers. However, [*pro se*] [p]laintiff has alleged that, rather than pursue this remedy, he filed a 90–day notice of intent to sue. As a result, his procedural due process claim is dismissed on this alternative ground."); *Liverpool v. City of New York*, No. 20 CIV. 4664 (ER), 2022 WL 4569594, at *6 (S.D.N.Y. Sept. 28, 2022) (dismissing *pro se* plaintiff's state law tort claims where he did not dispute he failed to file a timely notice of claim); *Garcia v. City of New York*, No. 15 CIV. 7470 (ER), 2017 WL 1169640, at *11–12 (S.D.N.Y. Mar. 28, 2017) (same).

For the sake of argument, the undersigned analyzes Plaintiff's negligent training claim. A claim for negligent hiring, retention, training, and supervision must include allegations that "(1) the tort-feasor and the defendant were in an employee-employer relationship, (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Jeanty v. City of New York*, No. 23-CV-9472 (OEM) (JAM), 2024 WL 5236462, at *34 (E.D.N.Y. Dec. 28, 2024) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)). Moreover, such a claim fails when the employee is acting within the scope of employment. *Id.; see also RDK NY Inc. v. City of New York*, No. 21-CV-01529(EK)(JAM), 2024 WL 4333704, at *8 (E.D.N.Y. Sept. 28, 2024) (quoting *Ambroise v. United Parcel Serv. of Am.*, 143 A.D.3d 929, 931 (2d Dep't 2016) ("where an employee is acting within the scope of his or her employment, the employer is liable under the theory of *respondeat superior*, and the plaintiff may not proceed with a claim to recover damages for negligent hiring, retention, supervision, or training.")).

Here, Plaintiff does not include factual allegations for each element of negligent training. *First*, to the extent that the employees in the Yaphank Facility were in an employee-employer

14

relationship with Toulon, that is not alleged. *Second*, there are no plausible allegations that Toulon knew or should have known that his employees would cause Plaintiff to contract Hepatitis A. *Third*, it may be construed that the conduct leading to Plaintiff's diagnosis was committed at the employer's premises, i.e. the Yaphank Facility. However, even if Plaintiff adequately pled all the elements, it appears all of the employees at the facility were acting within the scope of their employment, and thus, Plaintiff's claim still fails.

### III. Defendant's Request for the Court to Deny any Further Amendments

Defendant in its moving papers requests that this Court deny Plaintiff the ability to further amend his pleadings. (ECF Nos. 22-1 at 5-6, 22-6 at 9-10.)

Generally, *pro se* litigants are given an opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Jeffrey Panarello, Plaintiff, v. Suffolk Cnty., N.Y.S. Stony Brook Hosp., Northwell Health, Defendants.*, No. 2:25-CV-1243 (NJC)(SIL), 2025 WL 1384155, at *3 (E.D.N.Y. May 13, 2025) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). In *Panarello*, the Hon. Judge Nusrat J. Choudhury denied *pro se* plaintiff's leave to amend due to the many deficiencies present and found that another amendment would not cure the plaintiff's short comings. Different here than *Panarello* is that the three-year statute of limitations for Plaintiff's § 1983 claims and negligent hiring has not accrued. See id. at *7 (discussing the statute of limitations for claims under § 1983 are three years); *see also Universitas Educ., LLC v. Bank*, No. 15-CV-5643 (SAS), 2015 WL 9304551, at *3 (S.D.N.Y. Dec. 21, 2015) ("New York applies a three-year statute of limitations to all negligence claims, including claims for negligent hiring and negligent supervision."). As alleged, Plaintiff was in custody, where he experienced the conditions leading

15

to his diagnosis at the Yaphank Facility from August 29, 2023 through October 5, 2023, which led to Plaintiff contracting Hepatitis A. (ECF No. 10 at 1-2.)

Moreover, a court "should not dismiss without granting leave to amend at least once when a liberal reading of the [*pro se*] complaint gives any indication that a valid claim might be stated." *Hill v. Katz*, No. 1:24-CV-3266 (LDH) (LKE), 2025 WL 964094, at *3 (E.D.N.Y. Mar. 31, 2025) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). To that end, if an amendment cannot fix the present defects and would be futile, leave to amend should be denied. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). And that is the case here. Plaintiff has filed two proposed amended pleadings in response to Defendant's Motion to Dismiss. (ECF Nos. 22-4 and 22-5.) Both pleadings continue to suffer from the same infirmity: they fail to state a claim and rely exclusively upon conclusory statements. Therefore, the undersigned finds that a further amendment would not cure the apparent deficiencies in all versions of the Complaints, and recommends that further amendments not be permitted.

## **CONCLUSION**

Following a review of the pleadings in the most favorable light to Plaintiff, the undersigned concludes that: (i) Plaintiff has failed to state a claim pursuant to 42 U.S.C. § 1983 for deliberate indifference; and (ii) this Court should not exercise supplemental jurisdiction for Plaintiff's remaining claim of negligent hiring, retention, training, and supervision. Therefore, the undersigned respectfully recommends that Defendant's Motion to Dismiss (ECF No. 22) be granted. The undersigned also recommends that the Plaintiff be prohibited from further amending this complaint. Counsel for Defendant is to serve a copy of this Report and Recommendation on Plaintiff and file proof of service on ECF <u>within two business days</u>.

## **OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated: Central Islip, New York.
      May 19, 2025

                                            **RESPECTFULLY RECOMMENDED**,

                                            /S/ *James M. Wicks*
                                                JAMES M. WICKS
                                            United States Magistrate Judge